## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **MANUEL ROMAN, JIQUELLE KINNARD, and ANTHONY HAYWARD,** individually and on behalf of all persons similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **PRINCE TELECOM, LLC, COMCAST CORPORATION; and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,** <br><br> **Defendants.** | **Civil Action No.:** <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## COLLECTIVE AND CLASS ACTION COMPLAINT

1.     Plaintiffs Manuel Roman, Jiquelle Kinnard, and Anthony Hayward (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this lawsuit against Prince Telecom, LLC ("Prince Telecom"), Comcast Corporation, and Comcast Cable Communications Management, LLC (collectively, "Comcast"), as joint employers (collectively, "Defendants"), seeking all available remedies under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 to 219, and applicable Pennsylvania and Massachusetts wage-and-hour laws. The allegations

that follow are made on personal knowledge as to Plaintiffs' own conduct and on information and belief as to the acts of others.

## INTRODUCTION

2.     Plaintiffs and members of the proposed classes and collectives are current and former non-exempt employees of Defendants, who carried out Defendants' installation service business (hereinafter referred to collectively as "Technicians"). In particular, Plaintiffs seek to represent other current and former non-exempt employees who work or worked for Defendants as Technicians in the United States. Defendants' unlawful patterns, practices, and conduct described herein apply broadly to members of the proposed collectives, in violation of the FLSA.

3.     Plaintiffs Manuel Roman and Jiquelle Kinnard also seek to represent current and former non-exempt employees who work or worked as Technicians in Pennsylvania in this class action, and allege that Defendants have engaged in unlawful patterns, practices, and conduct described herein in violation of Pennsylvania's wage-and-hour laws.

4.     Plaintiff Anthony Hayward also seeks to represent current and former non-exempt employees who work or worked as Technicians in Massachusetts in this class action, and alleges that Prince Telecom has engaged in unlawful patterns, practices, and conduct described herein in violation of Massachusetts's wage-and-hour laws.

2

5.      Defendants knowingly and improperly fail to pay Technicians for all hours worked, fail to maintain accurate time and payroll records, fail to provide Technicians with accurate time and payroll statements, fail to provide Technicians with genuine, uninterrupted, duty-free meal periods, fail to reimburse Technicians for the necessary expenses that they incurred in order to fulfill Defendants' business requirements, and fail to pay Technicians their agreed-upon compensation in a timely manner and without unlawful deductions. As a result of these failures, Plaintiffs and those similarly situated did not receive minimum-wage, straight-time, or overtime pay as appropriate for all hours worked, did not receive time and payroll statements that accurately reflect their work performed and hours worked, did not receive the meal periods to which they were entitled, and had their take-home pay unlawfully reduced.

## JURISDICTION AND VENUE

6.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because those claims derive from a common nucleus of operative facts.

8.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants conduct business in this District and a substantial part of the events or omissions

giving rise to Plaintiffs' claims occurred within this District.

## PARTIES

9.      Plaintiff Manuel Roman is a citizen of Pennsylvania and resides in York, Pennsylvania. Plaintiff Roman worked for Defendants as a Technician from March 2014 to July 2017 and from February 2018 to October 2019 in and around the Gettysburg, Harrisburg, Hanover, and York regions of Pennsylvania.

10.     Plaintiff Jiquelle Kinnard is a citizen of Maryland and resides in Hagerstown, Maryland. Plaintiff Kinnard worked for Defendants as a Technician for several months in 2015, from January 2017 to July 2017, and from June 2018 to August 2018 in and around the Carlisle, Harrisburg, Shippensburg, State College, and York regions of Pennsylvania.

11.     Plaintiff Anthony Hayward is a citizen of Massachusetts and resides in West Springfield, Massachusetts. Plaintiff Hayward worked for Prince Telecom as a Technician from February 2017 to October 2018 in and around the Chicopee, and East Long Meadow, Southbridge, and Wooster regions of Massachusetts.

12.     Defendant Prince Telecom is an installation service provider that performs residential and commercial installations, digital converter deployment, high-speed modem installations, home security and automation, and underground and aerial construction services. It has more than 1,500 employees in 29 states. It is a registered Delaware limited liability company that does business in Pennsylvania,

Massachusetts, and other jurisdictions. It is headquartered at 551A Mews Drive, New Castle, Delaware. Prince Telecom may be served with process by serving its registered agent, the Corporation Trust Company, at 1209 Orange Street, Wilmington, Delaware.

13.     Prince Telecom employed Plaintiffs and continues to employ similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d). *See also* 29 C.F.R. 791.2(a).

14.     Defendant Comcast Corporation is incorporated in Pennsylvania. Its headquarters is in Philadelphia, Pennsylvania. Comcast does extensive business nationwide, including in Pennsylvania and Massachusetts.

15.     Defendant Comcast Cable Communications Management, LLC, is incorporated in Delaware. It is a subsidiary of Defendant Comcast Corporation. Its headquarters is in Philadelphia, Pennsylvania. Comcast does extensive business nationwide, including in Pennsylvania and Massachusetts.

16.     The unlawful acts alleged in this Complaint were committed by Defendants or their officers, agents, employees, or representatives, while actively engaged in the management of Defendants' businesses or affairs and with the authorization of Defendants.

17.     At all material times, Defendants have been employers within the meaning of the FLSA under 29 U.S.C. § 203(d).

18.    At all material times, Defendants have been enterprises within the meaning of the FLSA under 29 U.S.C. § 203(r).

19.    At all material times, Defendants have been enterprises in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA because Defendants had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

20.    Plaintiffs and Collective and Class members, as defined below, were and are employees of Defendants within the meaning of 28 U.S.C. § 203(e), Pennsylvania state law, the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment Collection Law, Massachusetts state law, and the Massachusetts Fair Minimum Wage Act.

21.    At all material times, Plaintiffs and Collective and Class members were and are employees who engaged in commerce or in the production of goods for commerce within the meaning of the FLSA under 29 U.S.C. § 207.

22.    Defendants had, and continue to have, annual gross business volumes of not less than $500,000, thereby exceeding the statutory standard. 29 U.S.C. § 203(s)(1)(A)(ii).

## COLLECTIVE AND CLASS DEFINITIONS

23.    Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees of Prince Telecom, LLC, working as cable installation technicians throughout the United States during the time period from three years prior to the filing of this Complaint until resolution of this action (the "Collective").

24.     Plaintiffs Roman and Kinnard also bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

> All current and former non-exempt employees jointly employed by Prince Telecom, LLC, and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the United States during the time period from three years prior to the filing of this Complaint until resolution of this action (the "Comcast Collective").

25.     Plaintiffs Roman and Kinnard bring Counts II, III, and IV (the Pennsylvania state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following class:

> All current and former non-exempt employees of Prince Telecom, LLC, working as cable installation technicians throughout the Commonwealth of Pennsylvania during the time period from four years[1] prior to the filing of this Complaint until resolution of this action (the "Pennsylvania Class").

26.     Plaintiffs Roman and Kinnard also bring Counts II, III, and IV (the Pennsylvania state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and the following subclass:

> All current and former non-exempt employees jointly employed by

---

[1]     The statute of limitations on the Pennsylvania Class's unjust enrichment claims under Pennsylvania law (Count IV) is four years.

Prince Telecom, LLC, and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the Commonwealth of Pennsylvania during the time period from four years[2] prior to the filing of this Complaint until resolution of this action (the "Pennsylvania Comcast Subclass").

27.    Plaintiff Hayward brings Counts V, VI, VII, and VIII (the Massachusetts state law claims) as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and the following class:

All current and former non-exempt employees of Prince Telecom, LLC, working as cable installation technicians throughout the Commonwealth of Massachusetts during the time period from six years[3] prior to the filing of this Complaint until resolution of this action (the "Massachusetts Class").

28.    The Pennsylvania Class, Pennsylvania Comcast Subclass, and Massachusetts Class are together referred to as the "State Law Classes."

29.    The Collective, Comcast Collective, and State Law Classes are together referred to as the "Classes" and the members of the Classes as "Class Members."

30.    Plaintiffs reserve the right to redefine the Classes prior to notice or class certification, and thereafter, as may be warranted or necessary based upon discovery or otherwise.

---

[2]    The statute of limitations on the Pennsylvania Comcast Subclass's unjust enrichment claims under Pennsylvania law (Count IV) is four years.

[3]    The statute of limitations on the Massachusetts Class's unjust enrichment claims under Massachusetts law (Count VIII) is six years.

## JOINT EMPLOYER ALLEGATIONS

31.     Prince Telecom and Comcast are or were the joint employers of Plaintiffs Roman and Kinnard and members of the Comcast Collective and the Pennsylvania Comcast Class for purposes of this action.

32.     Comcast directs, controls, or supervises, directly or indirectly, the work of Plaintiffs Roman and Kinnard and members of the Comcast Collective and the Pennsylvania Comcast Class, and thus was or is their joint employer under the FLSA and Pennsylvania wage and hour law.

33.     In particular, Comcast assigns work to Prince Telecom, who in turn assigns that work to Technicians. Comcast monitors and evaluates Technicians' work activities and work progress in real time throughout the course of the day using mobile devices. Comcast requires Technicians to use its application called Tech Net, which was later upgraded to Tech 360, to track Technicians' clock-in and clock-out times and to determine when Technicians are available and when they complete their jobs, which in turn determines Technicians' daily schedules.

34.     Comcast exercises control over and monitors Technicians' schedules, routes traveled, regions covered, availability, and job details. Comcast monitors and controls the manner in which Technicians enter information in various Comcast-controlled devices and applications, including without limitation Tech Net/Tech 360.

35.     All changes to a Technician's daily route, arrival and departure times,

and jobs are dictated by Comcast. For example, when Plaintiff Kinnard would call his supervisor to provide an update on his projected arrival at his next work location, his supervisor would instruct him to communicate with Comcast instead. Comcast is the point of contact for the Technicians.

36.    Comcast directs Technicians' day-to-day activities, individual schedules, hours, and assignments, as well as any re-assignments and instructions to return to sites throughout the course of the day. Comcast monitors every aspect of Technicians' daily work, as Technicians are required to directly communicate with Comcast dispatchers throughout the day. Comcast is in constant and direct communication with Technicians regarding all aspects of their day-to-day work, including without limitation Technician coordination, work orders, productivity, customer complaints, and escalations and investigations of customer complaints. Technicians are further required to obtain the approval of a Comcast dispatcher in order to take a meal break. For example, Plaintiff Kinnard would clock out for the day when instructed to do so by a Comcast dispatcher, even though he would frequently be tasked with additional duties after clocking out.

37.    Comcast has the power, directly and indirectly, to hire and fire Technicians, change Technicians' employment conditions, and render disciplinary action.

38.    Comcast determines the rate and method of pay for Technicians.

10

Comcast dictates the conditions upon which Technicians can receive payment for job assignments. Further, Comcast can and does change the amount of pay that Technicians receive for a given job at Comcast's sole discretion, and at times refuses to pay a Technician entirely, even after that Technician has completed the job in question under a different pay scale.

39.     Comcast dictates which job codes, if completed by Technicians, will be ultimately paid to Technicians. Comcast and Prince Telecom thus jointly provide wages and overtime to Technicians. The amounts paid by Comcast to Prince Telecom and then paid to the Technicians are insufficient to pay Technicians the lawful wages and overtime due to them.

40.     Comcast and Prince Telecom have contracts in place that grant Comcast the right to control the work conditions afforded to Technicians employed by Prince Telecom. In return for the services provided by Prince Telecom Technicians to Comcast's customers, Prince Telecom receives monetary sums for Technicians' completion of job codes approved by Comcast.

41.     Prior to obtaining employment with Prince Telecom, Technicians are required by Comcast to undergo a background check. Technicians must pass these checks ordered by Comcast in order to be hired by Prince Telecom.

42.     Comcast periodically subjects Technicians to drug screenings throughout their employment. Comcast requires that Technicians pass these tests in

order to maintain their employment.

43.     Technicians perform work on Comcast's customers' premises. While Technicians perform this work, Comcast requires them to display Comcast-issued identification badges and to wear uniforms bearing the Comcast logo.

44.     Comcast directly or indirectly performs administrative functions connected with Technicians' employment, including without limitation handling payroll and providing tools and equipment.

45.     Comcast maintains employment records for Technicians, including without limitation work orders, schedules, arrival/departure times, job codes, rates of payment, and payroll records.

46.     As employers of Plaintiffs Roman and Kinnard and members of the Comcast Collective and the Pennsylvania Comcast Class, Defendants, and each of them, are solely, jointly, and severally liable for back pay and other economic damages, including statutory penalties, owed to Plaintiffs Roman and Kinnard and members of the Comcast Collective and the Pennsylvania Comcast Subclass.

## **FACTUAL BACKGROUND**

47.     Prince Telecom provides cable and communication equipment installations on behalf of cable operators, including Comcast and Charter Communications, Inc.

48.     Since Prince Telecom's establishment in 1986, its operations have

grown substantially and, to execute its mission, it now employs Technicians in 29 states.

49.     Comcast is an American global telecommunications conglomerate, the largest broadcasting and cable television company in the world by revenue, which totals over $103 billion per year. Comcast is the largest TV cable company and home internet service provider in the United States, and the nation's third-largest home telephone service provider.

50.     Plaintiffs and Class Members currently work or formerly worked for Defendant Prince Telecom or jointly for Defendants Prince Telecom and Comcast as Technicians carrying out Defendants' installation service business.

51.     Technicians' job duties include without limitation installing, disconnecting, reconnecting, adding, changing, and troubleshooting cable TV, internet, and telephone equipment; attempting to identify and remedy sources of customer-perceived problems; driving company vehicles between home, office, warehouse, and work locations; cleaning, maintaining, and stocking vehicles and equipment; and educating customers.

**Working as a Technician for Defendants**

52.     Technicians' workdays begin early, typically between 6:00 a.m. and 7:00 a.m. On most days, Technicians first report to one of Prince Telecom's warehouses, where they gather equipment for the day and organize their vehicles.

Technicians who do not have enough equipment on hand must wait in line behind their fellow Technicians to gather additional equipment. Pursuant to Prince Telecom's policy and practice, Technicians are not allowed to clock in for the time they spend at the warehouse at the start of their shift.

53.    Once all uncompensated pre-shift activity is completed, Technicians receive their job assignments for the day, typically around 7:00 a.m.

54.    Technicians work long hours, typically six to seven days per week, ten to twelve hours per day, and between sixty and seventy-five hours per week.

55.    In particular, Plaintiff Roman typically worked six days per week and ten to twelve hours per day. It was common for him to begin his day around 7:30 a.m. and to work until 7:00 p.m. He often worked between sixty and seventy hours a week.

56.    Plaintiff Kinnard typically worked six days per week and ten to twelve hours per day. It was common for him to begin his day around 7:30 a.m. and to work until between 6:00 and 7:30 p.m., but sometimes as late as 9:00 p.m. depending on his assignments. He often worked between sixty and seventy hours a week.

57.    Plaintiff Hayward typically worked six days per week and eleven to thirteen hours per day. It was common for him to begin his day between 6:00 and 6:30 a.m. and to work until 6:00 or 7:00 p.m. He often worked between sixty and seventy-eight hours a week.

58.    Technicians are generally assigned five to ten jobs per day. Each job entails one or more tasks, *e.g.*, installing a cable, setting up internet service, or creating an electrical outlet.

59.    For each discrete task, Defendants provide Technicians with a corresponding job code. Each job code equals a set dollar amount. Throughout the day, and for each job, Technicians document these codes as they are completed, and then submit them to Defendants so that the Technicians can be compensated accordingly.

60.    Defendants, however, routinely delete codes that Technicians have submitted for completed jobs or change code entries to lower-paying codes. Defendants also pressure Technicians not to submit code entries for some of the tasks that they complete.

61.    Moreover, much of Technicians' work time goes unreported or is outright eliminated from their compensation. Defendants systemically pressure Technicians to underreport their hours to give the appearance of greater productivity and as a way to increase their regular hourly rates.

62.    When Technicians do not underreport their hours, Defendants threaten to—and in fact do—unilaterally change Technicians' time records. Upon information and belief, Technician supervisors are instructed to reduce Technicians' hours than those worked to give the appearance of greater productivity. For example,

Plaintiff Roman often observed that his job codes and hours were altered within Defendants' system after he entered them, with no explanation beyond an "authorized by supervisor" notation.

63.     The practices of underreporting and alerting hours result in Technicians performing substantial off-the-clock work, including overtime work, which goes unrecorded and unpaid by Defendants. Defendants' directives cause Plaintiffs and Class Members to underreport several hours per day.

64.     As a natural consequence of Technicians' overwhelming workload and Defendants' constant pressure to complete all daily job assignments, they are systematically denied the opportunity to take meal breaks. Defendants, however, routinely require Technicians to falsely document that they took a thirty-minute meal break, even when they did not do so. These thirty-minute meal periods—meal periods that rarely, in fact, occur—are uncompensated. Technicians are forced to eat while driving between job sites. Specifically, Defendants constantly pressure Technicians to keep working and to move on to the next job. Therefore, Technicians rarely have time to take a full uninterrupted, off-duty, thirty-minute meal period.

65.     If Technicians do not document that they took a thirty-minute meal break, Defendants often alter their time sheets to show a thirty-minute meal break. Defendants' billing departments routinely alter time records to include a thirty-minute meal period if the Technician failed to include one, whether the Technician

16

took a thirty-minute meal period or not. Plaintiffs are informed and believe that this was done pursuant to Defendants' express instructions.

66.     Ultimately, Defendants expect Plaintiffs and Class Members to work constantly throughout the day, including during breaks. Defendants constantly check in with Plaintiffs and Class Members throughout the day, often calling them numerous times to ensure that they are continuously working.

67.     Technicians also perform substantial off-the-clock work after their shifts end. On an almost-daily basis a Technician's supervisor or manager instruct Technicians to return to work after clocking out, typically to finish a lengthy job or to assist another Technician.  Such tasks can take two hours or more to complete. Defendants make no provision for Technicians to clock in or otherwise record this time for compensation.

68.     Additionally, Defendants require Technicians to go to customers' homes on their day off to fix or complete a job. Defendants make no provision for Technicians to clock in or otherwise record this time for compensation.

69.     The post-shift work is uncompensated, meaning that Technicians typically put in four to ten hours of post-shift work per week, or more, without compensation.

**Technicians' Compensation Model**

70.     Technicians are primarily paid on a piece-rate basis. Defendants' piece-

rate compensation system uses: (1) the total dollar value for piece-rate work per job and (2) the number of hours recorded as worked, to calculate each Technician's regular hourly rate of pay for each week. In order to calculate Technicians' regular hourly rates, Defendants add up the total accepted codes, which correlate to a dollar amount, and then divide this amount by the number of accepted hours worked. However, Technicians' hours worked are not accurately recorded and are severely underreported. Technicians are pressured by their managers and supervisors to enter fewer hours worked in order to show higher productivity and to increase their hourly rates.

71.     The policies and practices of Defendants have been similar for Plaintiffs and Class Members, regardless of location.

**Defendants' Systematic Violations of Federal, Pennsylvania, and Massachusetts Labor Laws**

72.     As a result of the practices described above, Defendants systematically violated, and continue to violate, the FLSA and the wage-and-hour laws of Pennsylvania and Massachusetts.

73.     Defendants' policy and practice of having Technicians work off the clock, their policy of eliminating piece rates and hours worked, and their failure to pay for overtime, all result in violations of Pennsylvania and Massachusetts law.

74.     Defendants' conduct also reduces the total hours factored into Defendants' compensation formula, which necessarily reduces Technicians' total

compensation, overtime compensation, as well as the total number of hours compensated at the required, *bona fide* overtime rate. This uniformly violates the FLSA. 29 U.S.C. § 207(a), (g).

75.    In addition, Defendants routinely deny Plaintiffs and Class Members timely and compliant off-duty meal periods. In particular, Defendants routinely refuse to authorize, permit, or make available to Technicians timely and compliant thirty-minute meal periods as required by law, while simultaneously automatically deducting thirty minutes from Technicians' pay for meal breaks that are rarely in fact taken.

76.    Throughout the relevant time period, Defendants expected and required Plaintiffs and Class Members to be available to work during their entire shifts, even during purported meal breaks and rest breaks.

77.    Defendants' method of paying Plaintiffs and Class Members was willful and was not based on a good-faith and reasonable belief that their conduct complied with either the FLSA, Pennsylvania, or Massachusetts law. To the contrary, Defendants' formulated their method of paying Plaintiffs and Class Members in order to avoid liability under the governing wage-and-hour laws.

78.    Defendants' common course of wage-and-hour misconduct includes routinely failing to maintain true and accurate records of the hours worked by Plaintiffs and Class Members. In particular, Defendants have failed to record hours

that Plaintiffs and Class Members worked during missed meal and rest breaks, as well as off-the-clock work performed before and after their shifts.

79.    To the contrary, Defendants instruct Technicians to falsely clock out for lunch to reflect that they took a meal break, with complete indifference as to whether Technicians in fact were able to, and did, take a meal break. Typically, Technicians were forced to eat while they were driving due to an overwhelmingly packed schedule. If Technicians fail to document that they took a meal break, Defendants alter their time records to reflect a meal period that was never taken.

80.    Beyond Defendants' failure to authorize or permit meal breaks, Technicians' schedules are too busy, and Defendants' pressure to complete job assignments is too constant, for Technicians to take meal breaks. Defendants monitor Plaintiffs and Class Members throughout the day, including by telephone, directing them to go from customer to customer without breaks. As a result, the time worked during missed meal breaks by Plaintiffs and Class Members goes unrecorded and uncompensated.

81.    Since Technicians are systematically deprived to the wages to which they are due and entitled, Plaintiffs and Class Members do not receive all pay owed to them at the end of their employment. Compensation for off-the-clock work, missing piece rates, lowered piece rates, and overtime remain outstanding after termination.

82.     Compensation provided to Plaintiffs and Class Members is not paid finally, unconditionally, free and clear of deductions or kickbacks. To the contrary, Defendants require Plaintiffs and Class Members to incur numerous work-related expenses.

83.     Indeed, Technicians purchase tools before and during their employment with Defendants. When each Technician begins employment, both the managers and supervisors inquire about which tools they have in their possession. If a Technician does not possess the necessary tools to complete jobs assigned to them, Defendants require each Technician to purchase the necessary tools from Defendants.

84.     Technicians must purchase their own tools, such as wireless drills, drill bits, pliers, wrenches, screwdrivers, torches, staple guns, meters, crimpers, strippers, boots, and helmets. Defendants also charge Technicians to purchase the uniform shorts needed in order for them to comply with Defendants' uniform requirements.

85.     Moreover, Technicians purchase gasoline for their work trucks in order to transit between their assigned jobs, but are not reimbursed for this expense.

86.     In addition, Defendants subtract from Technicians' compensation for lost or damaged equipment, missed timeframes, failed quality control checks, parking tickets, toll expenses, and other costs incurred by Technicians during the performance of their work duties for Defendants.

87.     Despite these requirements, Defendants refuse to compensate Plaintiffs

and Class Members for the costs associated with their work-related expenses.

88.     Some of these costs are incurred during weeks in which Plaintiffs and Class Members worked in excess of forty hours. Since Plaintiffs and Class Members routinely work, or worked, in excess of forty hours in a workweek, and because Defendants do not compensate Plaintiffs and Class Members for these necessarily incurred business expenses—expenses incurred solely for Defendants' benefit—these costs cut into the overtime wages required to be paid to Plaintiffs and Class Members.

89.     Defendants' common course of wage-and-hour misconduct also includes routinely making improper deductions from the wages of Plaintiffs and Class Members. This includes without limitation deductions for loss or damage of tools and equipment that are required or necessary to perform the job and deductions for the purchase of company-mandated uniforms.

90.     Defendants derive a financial profit or benefit from all of these deductions. Defendants had actual or constructive knowledge that these deductions were being taken from the wages of Plaintiffs and Class Members.

## COLLECTIVE ACTION ALLEGATIONS

91.     Plaintiffs pursue their FLSA claims on behalf of the Collective and Comcast Collective pursuant to 29 U.S.C. § 216(b).

92.     Plaintiffs, individually and on behalf of the Collectives defined above,

seek relief on a collective basis challenging Defendants' policies and practices of failing to accurately record all hours worked, and failing to properly pay Technicians for all hours worked, including overtime compensation. The number and identify of other similarly situated persons yet to opt-in and consent to by party-plaintiffs may be determined from the records of Defendants, and potential opt-ins may be easily and quickly notified of the pendency of this action.

93.    Plaintiffs' claims for violations of the FLSA may be brought and maintained as a collective action pursuant to Section 216(b) of the FLSA, because Plaintiffs' claims are similar to the claims of the members of the proposed Collectives.

94.    The members of the Collective and the Comcast Collective are similarly situated, as they have substantially similar job duties and requirements and are subject to a common policy, practice, or plan that requires them to perform work off the clock and without compensation in violation of the FLSA.

95.    Plaintiffs are representative of the members of the Collective and the Comcast Collective and are acting on behalf of their interests, as well as Plaintiffs' own interests, in bringing this action.

96.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Collective and the Comcast Collective. Plaintiffs have retained counsel competent and experienced in employment and wage-and-hour

class action and collective action litigation.

97.    The similarly situated members of the Collective and the Comcast Collective are known to Defendants, are readily identifiable, and may be located through Defendants' records. These similarly situated employees may readily be notified of this action, and allowed to opt-in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, and attorney's fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS

98.    Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of themselves and the State Law Classes as defined above.

99.    The members of the State Law Classes are so numerous and dispersed that joinder of all members is impracticable. Upon information and belief, there are more than fifty (50) members in each of the State Law Classes.

100.    Plaintiffs will fairly and adequately represent and protect the interests of the State Law Classes because there is no conflict between the claims of Plaintiffs and those of the State Law Classes, and Plaintiffs' claims are typical of the claims of the State Law Classes. Plaintiffs' undersigned counsel is competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like the one at bar.

101.    There are questions of law and fact common to the proposed State Law

Classes, which predominate over any questions affecting only individual Class members, including, without limitation:

 a. whether Defendants Prince Telecom and Comcast violated and continue to violate federal and state law (including that of Pennsylvania and Massachusetts) through their policies and practices of not paying their Technicians for all hours worked;

 b. whether Defendants violated and continue to violate federal and state law (including that of Pennsylvania and Massachusetts) through their policies and practices of not paying their Technicians for overtime compensation;

 c. whether Defendants violated and continue to violate federal and state law (including that of Pennsylvania and Massachusetts) through their policies and practices of not paying their Technicians at the applicable minimum wage;

 d. whether Defendants violated and continue to violate state law (including that of Pennsylvania and Massachusetts) through their policies and practices of not providing their Technicians with meal and rest periods to which they are entitled; and

 e. whether Defendants violated and continue to violate state law (including that of Pennsylvania and Massachusetts) through their

policies and practices of not reimbursing their Technicians for reasonable business expenses.

102.   Plaintiffs' claims are typical of the claims of the State Law Classes in the following ways, without limitation:  (a) Plaintiffs are members of the State Law Classes; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Classes; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the State Law Classes and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the State Law Classes; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the State Law Classes members.

103.   Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the State Law Classes predominate over any questions affecting only individual Class members.

104.   Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and

efficient adjudication of this controversy. The State Law Classes are readily identifiable from Defendants' own employment records. Prosecution of separate actions by individual members of the State Law Classes would create the risk of inconsistent or varying adjudications with respect to individual State Law Classes members that would establish incompatible standards of conduct for Defendants.

105.   A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the State Law Classes members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

106.   Without a class action, Defendants will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the State Law Classes.  Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## Violation of the FLSA
## (On Behalf of Plaintiffs, the Collective, and the Comcast Collective)

107.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

108.   Plaintiffs, Collective members, and Comcast Collective members, Defendants' employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

27

109.   The FLSA requires that covered employees receive compensation for all hours worked and overtime compensation not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a workweek. 29 U.S.C. § 207(a)(1).

110.   At all times material herein, Plaintiffs, the Collective, and the Comcast Collective are covered employees entitled to the rights, protections, and benefits provided under the FLSA. 29 U.S.C. § 203(e).

111.   Defendants are covered employers required to comply with the FLSA's mandates. 29 U.S.C. § 203(d); 29 C.F.R. § 552.109(a).

112.   Defendants violated the FLSA with respect to Plaintiffs, the Collective, and the Comcast Collective by, among other things, failing to compensate Plaintiffs, the Collective, and the Comcast Collective for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage or overtime premium for such work. 29 U.S.C. § 206; 29 C.F.R. § 531.35; 29 U.S.C. § 207(a), (g). Defendants also violated the FLSA by failing to create, keep, and preserve records of all hours worked by Plaintiffs, the Collective, and the Comcast Collective sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA, 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

113.   Plaintiffs, the Collective, and the Comcast Collective are victims of a

uniform and company-wide compensation policy. This uniform policy, in violation of the FLSA, has been applied to current and former non-exempt employees of Defendants, working throughout the United States.

114.   Plaintiffs, the Collective, and the Comcast Collective are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

115.   Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not in violation of the FLSA and, as a result thereof, Plaintiffs, the Collective, and the Comcast Collective are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay or prejudgment interest at the applicable rate or both. 29 U.S.C. § 216(b).

116.   As a result of the aforesaid violations of the FLSA's provisions, pay, including minimum-wage, straight-time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiffs, the Collective, and the Comcast Collective. Accordingly, Defendants are liable for unpaid wages, together with an equal amount as liquidated damages, as well as attorney's fees and the costs of this action.

117.   In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

118.   Wherefore, Plaintiffs, the Collective, and the Comcast Collective request relief as hereinafter provided.

## COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (On Behalf of Plaintiffs Roman and Kinnard, the Pennsylvania Class, and the Pennsylvania Comcast Subclass)

119.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

120.   The Pennsylvania Minimum Wage Act ("PMWA") requires that covered employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 Pa. Code § 231.21(b).

121.   The PMWA also requires that Defendants' hourly employees receive the minimum wage for all hours worked irrespective of whether nominally paid on a piece-rate basis or any other basis, at the rate of seven dollars and fifteen cents ($7.15) per hour commencing July 24, 2009. 43 Pa. Stat. §§ 333.103, 333.104, and 333.113.

122.   An employee who receives less than this minimum wage is entitled to recover "the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court[.]" 43 Pa. Stat. § 333.113.

123.   The PMWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1½) times the regular hourly rate at which he or she is employed.  *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41

124.   At all times material herein, Plaintiffs Roman and Kinnard, the Pennsylvania Class members, and the Pennsylvania Comcast Subclass members are covered employees entitled to the protections of the PMWA. 43 Pa. Stat. § 333.103(h).  Plaintiffs Roman and Kinnard, the Pennsylvania Class members, and the Pennsylvania Comcast Subclass are not exempt from the PMWA.

125.   Defendants are covered employers required to comply with the PMWA's mandates. 43 Pa. Stat. § 333.103(g).

126.   The PMWA defines "wages" as "compensation due to any employee by reason of his or her employment."  43 Pa. Stat. § 333.103(d).

127.   Under the PMWA, overtime is calculated based on the number of hours worked in a "workweek," which the Pennsylvania Department of Labor has defined as "a period of 7 consecutive days."  34 Pa. Code. § 231.42.

128.   Defendants violated the PMWA with respect to Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass by, among other things, failing to compensate them for all hours worked and, with respect to such hours, failing to pay the legally mandated minimum wage

or overtime premium for such work. Defendants also violate the PMWA by failing to keep true and accurate records of all hours worked by Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass. 43 Pa. Stat. § 333.108.

129.   Defendants maintain policies and procedures that force Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass to work off the clock, without compensation. Due to the grinding work schedules and the systematic denial of piece rates and compensation for their on-duty time, Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass are routinely compensated at a rate that is less than the statutory minimum wage. 34 Pa. Code. § 231.42.

130.   Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass regularly work well in excess of forty hours per workweek.

131.   Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass also pay expenses necessary to their employment with Defendants but are not reimbursed for these expenditures.

132.   The combination of long work schedules and unreimbursed expenses regularly result in payment at rates below the statutory minimum wage.

133.    By failing to maintain adequate time records as required by the PMWA, 43 Pa. Stat. § 333.108, Defendants make it difficult to calculate the minimum-wage compensation due to Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass.

134.    Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass are entitled to damages equal to the mandated pay, including minimum wage, straight time, and overtime premium pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew or showed reckless disregard for whether the alleged conduct was prohibited by the PMWA.

135.    As a result of these violations of the PMWA, pay, including minimum wage, straight time, and overtime compensation, has been unlawfully withheld by Defendants from Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass. Accordingly, Defendants are liable for unpaid wages, attorney's fees, and costs of this action.

**COUNT III**
**Violation of the Pennsylvania Wage Payment Collection Law**
**(On Behalf of Plaintiffs Roman and Kinnard, the Pennsylvania Class, and the**
**Pennsylvania Comcast Subclass)**

136.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

137.    At all times material herein, Plaintiffs Roman and Kinnard and the

33

members of the Pennsylvania Class and the Pennsylvania Comcast Subclass are covered employees entitled to the protections of the Pennsylvania Wage Payment Collection Law ("PWPCL"). 43 Pa. Stat. § 260.9a(a).

138.   Defendants are covered employers required to comply with the PWPCL's mandates. 43 Pa. Stat. § 260.1.

139.   The PWPCL defines "wages" as "[i]ncluding all earnings of an employee, regardless of whether determined on time, task, piece, commission or other method of calculation."  43 Pa. Stat. § 260.1.

140.   The PWPCL, 43 Pa. Stat. § 260.5(a), provides that:

> Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable. If requested by the employee, such payment shall be made by certified mail.

141.   Pursuant to the PWPCL, Defendants are obligated to pay employees all wages and overtime within fifteen days of the end of the pay period. 43 Pa. Stat. § 260.3.

142.   The PWPCL, 43 Pa. Stat. § 260.10, provides that:

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employee of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the

wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employee shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

143.    The PWPCL imposed a duty on employers to notify their employees of the time and place of payment and the rate of pay to be paid. 43 Pa. Stat. § 260.4.

144.    The PWPCL also provides that "[n]o provision of this act shall in any way be contravened or set aside by private agreement." 43 Pa. Stat. § 260.7.

145.    The PWPCL, 43 Pa. Stat. 260.9a(a), provides that:

Actions by an employee, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employees for and in behalf of himself or themselves and other employees similarly situated, or such employee or employees may designate an agent or representative to maintain such action or on behalf of all employees similarly situated. Any such employee, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.

146.    Defendants violated the PWPCL with respect to Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass by, among other things, failing to compensate them for all hours worked

and, with respect to such hours, failing to pay the legally mandated overtime premium due on regular paydays designated in advance.

147.   Defendants further violated the PWPCL by failing to keep true and accurate records of all hours worked by Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass.

148.   By failing to notify Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass about the time and place for payment of their overtime hours, Defendants violated the PWPCL and caused economic harm to Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass. 43 Pa. Stat. § 260.4.

149.   Defendants violated the PWPCL by failing to notify Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass that Defendants did not intend to pay them at an overtime rate for working their scheduled overtime hours. 43 Pa. Stat. § 260.4.

150.   As a result of the aforesaid violations of the PWPCL, Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass are entitled to recover all unpaid overtime wages, mandatory attorney's fees and costs of suit, liquidated damages of twenty-five percent (25%), and prejudgment interest. 43 Pa. Stat. §§ 260.9a(a), 260.10.

## COUNT IV
## Unjust Enrichment
## (On Behalf of Plaintiffs Roman and Kinnard, the Pennsylvania Class, and the Pennsylvania Comcast Subclass)

151.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

152.   Defendants have received and benefited from the uncompensated labors of Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment under the common law of Pennsylvania.

153.   At all times relevant herein, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass without paying them the lawful and appropriate minimum wage, regular rate, or overtime premium for all hours worked.

154.   Contrary to all good faith and fair dealing, Defendants induced Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass to perform work while failing to pay the minimum wage, regular rate, or overtime compensation for all hours worked as required by law.

155.   By reason of having secured the work and efforts of Plaintiffs Roman

and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass without paying them the all compensation required by law, Defendants enjoyed reduced overhead with respect to their labor costs, and therefore realized additional earnings and profits to their own benefit and to the detriment of Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass. Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

156.   Accordingly, Plaintiffs Roman and Kinnard and the members of the Pennsylvania Class and the Pennsylvania Comcast Subclass are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

**COUNT V**
**Violation of the Massachusetts Wage Act Regarding Overtime**
**(On Behalf of Plaintiff Hayward and the Massachusetts Class)**

157.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

158.   The Massachusetts Fair Minimum Wage Act requires that employees be compensated for all hours worked in excess of forty hours per week at a rate not less than one and one-half times the employee's regular rate of pay. Mass. Gen. L. c. 151 § 1A.

159.   Defendant Prince Telecom's conduct, as set forth above, in failing to

pay Plaintiff Hayward and Massachusetts Class members overtime wages which they earned as a result of their employment violates the Massachusetts overtime law, Mass. Gen. L. C. 151 § 1A. This claim is brought pursuant to Mass. Gen. L. C. 151 § 1B.

160.   Consistent with Mass. Gen. L. c. 149 § 150, Plaintiff Hayward filed a wage claim with the office of the Massachusetts Attorney General, which issued a right-to-sue letter on April 9, 2021.

## COUNT VI
### Violation of the Massachusetts Wage Act Regarding Timely Wage Payment
### (On Behalf of Plaintiff Hayward and the Massachusetts Class)

161.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

162.   As set forth above, Defendant Prince Telecom violated the Massachusetts Wage Act by failing to timely pay Plaintiff Hayward and Massachusetts Class members all wages due to them as such wages became due and payable.

163.   Prince Telecom's failure to pay overtime wages as required by Mass. Gen. L. c. 151 § 1A caused Plaintiff Hayward and Massachusetts Class members to be deprived of the full amount of their earned wages when such wages became due and payable, including upon their termination.

164.   Prince Telecom's failures to timely pay due and payable wages were

repeated, knowing, and willful.

165.   Likewise, Prince Telecom's conduct, as set forth above, in requiring Plaintiff Hayward and Massachusetts Class members to incur numerous work-related business expenses that properly should have been borne by Prince Telecom, violates Mass. Gen. L. c. 149 § 148. This includes, without limitation, unlawful deduction from wages incurred for tools, supplies, gasoline, and uniforms, purchased both before and during employment. This claim is brought pursuant to Mass. Gen. L. c. 149 § 150.

166.   As a result of Prince Telecom's violation of the Massachusetts Wage Act, Plaintiff Hayward and Massachusetts Class members have incurred harm and loss in an amount to be determined at trial, along with mandatory treble damages, attorney's fees, and costs of litigation. Mass. Gen. L. c. 149 § 150.

## COUNT VII
### Violation of the Massachusetts Wage Act Regarding Minimum Wage
### (On Behalf of Plaintiff Hayward and the Massachusetts Class)

167.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

168.   The Massachusetts Fair Minimum Wage Act requires that employees be compensated for all hours worked at the full Massachusetts minimum wage, which be4came $13.50 per hour effective January 1, 2021.  Mass. Gen. L. c. 151 § 1.

169.   Defendant Prince Telecom's conduct, as set forth above, in failing to pay Plaintiff Hayward and Massachusetts Class members the minimum wage which they earned as a result of their employment, violates the Massachusetts minimum wage law, Mass. Gen. L. c. 151 §§ 1, 7. In requiring Plaintiff Hayward and Massachusetts Class members to incur numerous work-related expenses that properly should have been born by Prince Telecom, Prince Telecom has caused these employees' rate of pay to fall below the lawful minimum wage in violation of the Massachusetts minimum wage law. This claim is brought pursuant to Mass. Gen. L. c. 151 § 20.

## COUNT VIII
### Unjust Enrichment
### (On Behalf of Plaintiff Hayward and the Massachusetts Class)

170.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

171.   Defendant Prince Telecom has received and benefited from the uncompensated labors Plaintiff Hayward and Massachusetts Class members, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment under the common law of Massachusetts.

172.   At all times relevant herein, Prince Telecom devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing work from Plaintiff Hayward and Massachusetts Class members without paying them the

lawful and appropriate minimum wage, regular rate, or overtime premium for all hours worked.

173.   Contrary to all good faith and fair dealing and to the reasonable expectations of Plaintiff Hayward and the Massachusetts Class members, Prince Telecom induced these employees to perform work while failing to pay the minimum wage, regular rate, or overtime compensation for all hours worked as required by law.

174.   By reason of having secured the work and efforts of Plaintiff Hayward and Massachusetts Class members without paying them all compensation required by law, Prince Telecom enjoyed reduced overhead with respect to its labor costs, and therefore realized additional earnings and profits to its own benefit and to the detriment of Plaintiff Hayward and Massachusetts Class members. Prince Telecom retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

175.   Accordingly, Plaintiff Hayward and Massachusetts Class members are entitled to judgment in an amount equal to the benefits unjustly retained by Prince Telecom.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential Collective and Comcast Collective members;

c.  An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Pennsylvania Class, the Pennsylvania Comcast Subclass, and the Massachusetts Class;

d.  Damages (including all unpaid overtime compensation and all unpaid wages) and pre-judgment and post-judgment interest to the fullest extent permitted under the law;

e.  All compensatory damages due under the FLSA, Pennsylvania, or Massachusetts law, including lost wages, earnings, and other employee benefits, restitution, and all other sums of money owed to Plaintiffs, and Class Members, together with interest on these amounts, according to proof;

f.  Liquidated damages and penalties to the fullest extent permitted under the law;

g.  Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

h.  Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a jury trial on all claims and issues.

Dated: <u>April 13, 2021</u>

Respectfully submitted,

*/s/ Shanon J. Carson*

Shanon J. Carson (SBN 85957)
Camille Fundora Rodriguez (SBN 312533)
(*pro hac vice* forthcoming)
Stacy Savett (*pro hac vice* forthcoming)
Daniel F. Thornton (SBN 318431)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
crodriguez@bm.net
stasavett@bm.net
dthornton@bm.net

Carolyn H. Cottrell (*pro hac vice* forthcoming)
Michelle S. Lim (*pro hac vice* forthcoming)
Ori Edelstein (*pro hac vice* forthcoming)
SCHNEIDER WALLACE COTTRELL
KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel.: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
mlim@schneiderwallace.com
oedelstein@schneiderwallace.com

*Attorneys for Plaintiffs and the Proposed Classes*