## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MANUEL ROMAN,<br>JIQUELLE KINNARD, and<br>ANTHONY HAYWARD,<br>individually and on behalf of all<br>persons similarly situated,**<br><br>   **Plaintiffs,**<br><br> **v.**<br><br>**PRINCE TELECOM, LLC,<br>COMCAST CORPORATION, and<br>COMCAST CABLE<br>COMMUNICATIONS<br>MANAGEMENT, LLC,**<br><br>   **Defendants.** | **No.: 1:21-cv-00693**<br><br>**Collective and Class Action** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE <u>NOTICE PURSUANT TO 29 U.S.C. § 216(b)</u>

## **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ........................................................................................1

II.   PROCEDURAL HISTORY ...........................................................................3

III.  FACTUAL BACKGROUND .........................................................................4

  A. Technicians Across the Country Have the Same Job Duties and Are
  Subject to the Same Policies and Procedures.................................................. 4

  B. Compensation Model Results in Systemic Wage Violations............................. 7

IV.   ARGUMENT...............................................................................................10

  A. The Court Should Conditionally Certify the Proposed Collective for the
  Purpose of Facilitating Notice ........................................................................ 10

  B. Plaintiffs' FLSA Claims Should Be Conditionally Certified Because
  Plaintiffs Established a Factual Basis to Support Allegations of a Common
  Pay Policy ...................................................................................................... 13

  C. Similar Cases Have Been Certified ........................................................... 16

  D. Plaintiffs' Proposed Notice Is Accurate and Informative, and the Notice
  Plan Should Be Approved................................................................................ 17

V.    CONCLUSION ...........................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babcock v. Butler County,*
  806 F.3d 153 (3d Cir. 2015) ...................................................................13

*Beasley v. Custom Commc'ns, Inc.,*
  2016 WL 5468255 (E.D.N.C. Sept. 28, 2016) ......................................16

*Bellan v. Capital BlueCross,*
  496 F. Supp. 3d 854 (M.D. Pa. 2020) ...................................................15

*Bellaspica v. PJPA, LLC,*
  3 F. Supp. 3d 257 (E.D. Pa. 2014)..........................................................11

*Belt v. P.F. Chang's China Bistro, Inc.,*
  2020 WL 3829026 (E.D. Pa. July 8, 2020) ...........................................19

*Calvillo v. Bull Rogers, Inc.,*
  267 F. Supp. 3d 1307 (D.N.M. 2017).....................................................19

*Camesi v. Univ. of Pittsburgh Med. Ctr.,*
  729 F.3d 239 (3d Cir. 2013) ...................................................................10

*De Asencio v. Tyson Foods, Inc.,*
  342 F.3d 301 (3d Cir. 2003) ...................................................................13

*Dickensheets v. Arc Marine, LLC,*
  440 F. Supp. 3d 670 (S.D. Tex. 2020).....................................................19

*Eley v. Stadium Grp.,*
  2015 WL 5611331 (D.D.C. Sept. 22, 2015).............................................19

*Fenley v. Wood Grp. Mustang, Inc.,*
  170 F. Supp. 3d 1063 (S.D. Ohio 2016)...................................................20

*Fitch v. Giant Eagle Inc.,*
  2020 WL 8620076 (W.D. Pa. Oct. 28, 2020)................................... 12, 15

*Gevasio v. Wawa, Inc.*,
2018 WL 385189 (D.N.J. Jan. 11, 2018) ............................................................19

*Gilbertson v. J. Givoo Consultants I, Inc.*,
2021 WL 689114 (D.N.J. Feb. 23, 2021)............................................................18

*Given v. Love's Travel Stops & Country Stores, Inc.*,
2018 WL 925996 (M.D. Pa. Feb. 16, 2018)................................................. 12, 15

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989) ..................................................................................... 17, 21

*In re Deloitte & Touche, LLP Overtime Litig.*,
2012 WL 340114 (S.D.N.Y. Jan. 17, 2012)........................................................20

*In re Enterprise Rent-A-Car Empl. Pracs. Litig.*,
2010 WL 3447783 (W.D. Pa. Aug. 13, 2010)......................................................12

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
132 F. Supp. 3d 707 (D.S.C. 2015) .....................................................................19

*Jason v. Falcon Data Com, Inc.*,
2011 WL 2837488 (E.D.N.Y. July 18, 2011) ......................................................17

*Joiner v. Groupware Int'l, Inc.*,
2010 WL 2136533 (M.D. Fla. May 27, 2010) .....................................................17

*Kesley v. Entm't U.S.A. Inc.*,
67 F. Supp. 3d 1061 (D. Ariz. 2014)...................................................................20

*McConnell v. EN Eng'g, LLC*,
2020 WL 6747991 (W.D. Pa. Oct. 8, 2020).........................................................11

*Monroe v. FTS USA, LLC*,
860 F.3d 389 (6th Cir. 2017) ...............................................................................16

*Rood v. R&R Express, Inc.*,
2019 WL 5422945 (W.D. Pa. Oct. 23, 2019)........................................................10

*Ruehl v. Viacom, Inc.*,
500 F.3d 375 (3d Cir. 2007) .................................................................................11

*Simpson v. Prince Telecom, LLC*,
　2017 WL 1206403 (D. Del. Mar. 31, 2017)...........................................................8

*Smith v. Sovereign Bancorp, Inc.*,
　2003 WL 22701017 (E.D. Pa. Nov. 13, 2003).....................................................10

*Symczyk v. Genesis Healthcare Corp.*,
　656 F.3d 189 (3d Cir. 2011) ...................................................... 10, 11, 12

*Taylor v. Bear Commc'ns, LLC*,
　2013 WL 3270971 (W.D. Mo. June 27, 2013)....................................................16

*Thompson v. Peak Energy Servs. USA, Inc.*,
　2013 WL 5511319 (W.D. Pa. Oct. 4, 2013)........................................................20

*Vasil v. Dunham's Athleisure Corp.*,
　2015 WL 7871360 (W.D. Pa. Dec. 4, 2015) .......................................................11

*Vega v. Point Security, LLC*,
　2017 WL 4023289 (W.D. Tex. Sept. 13, 2017) ..................................................19

*Waltz v. Aveda Transp. & Energy Servs., Inc.*,
　2016 WL 7440267 (M.D. Pa. Dec. 27, 2016) .....................................................11

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
　767 F. Supp. 2d 445 (S.D.N.Y. 2011) ................................................................20

*Williams v. Grayco Cable Servs., Inc.*,
　187 F. Supp. 3d 760 (S.D. Tex. 2016)................................................................16

*Woods v. Vector Mktg. Corp.*,
　2015 WL 1198593 (N.D. Cal. Mar. 16, 2015) ....................................................20

*Zavala v. Wal Mart Stores Inc.*,
　691 F.3d 527 (3d Cir. 2012) ...............................................................................10

## Statutes

29 U.S.C. §§ 201 *et seq.*..........................................................................................7

29 U.S.C. §§ 206, 207(a)(1)............................................................................. 19, 20

29 U.S.C. §§ 207 (a), (g)........................................................................................20

29 U.S.C. § 216(b) ........................................................................... 1, 7, 9

**Regulations**

29 C.F.R. § 531.35 ...............................................................................20

29 C.F.R. §§ 785.18, 785.19(a)............................................................19

## I.   __INTRODUCTION__

In this minimum wage and overtime collective and class action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and state law, Plaintiffs Manuel Roman, Jiquelle Kinnard, and Anthony Hayward (collectively, "Plaintiffs") seek the Court's approval, in accord with 29 U.S.C. § 216(b), as to the form and method of providing notice of this litigation to the alleged Collective, which is defined to include:

> All current and former non-exempt employees of Prince Telecom, LLC, working as cable installation technicians throughout the United States between [insert date three years prior to the date that the Court issues an Order granting Conditional Certification] and the present (the "Collective" or "Technicians").[1]

Prince Telecom, LLC ("Prince"), and its client telecommunication providers, such as Defendants Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast"), jointly employed Plaintiffs and continue to employ over 1,500 other Technicians to provide cable and communications installation services across 29 states. In an exceedingly competitive industry, the continuation of Prince's lucrative partnership with telecommunications

---

[1]    Plaintiffs' Complaint also alleges a sub-collective that consists of: "All current and former non-exempt employees jointly employed by Prince Telecom, LLC, and Comcast Corporation or Comcast Cable Communications Management, LLC, working as cable installation technicians throughout the U.S. during the time period from three years prior to the filing of this Complaint until resolution of this action." Compl. ¶24. For purposes of the requested notice, these Collective members fall within the broader collective definition.

providers, including Comcast, depends on ensuring that high standards of timeliness and customer service are consistently met. To meet these rigid standards, Prince hires hourly Technicians—like Plaintiffs and other Collective members—to perform cable, telephone, and internet installation services. By necessity, Prince cannot provide these services without subjecting all Technicians to the same common compensation policies and practices.

Plaintiffs allege that Prince eschewed its obligations under the FLSA and state law by denying Plaintiffs and other similarly situated Technicians their rights to overtime and minimum-wage pay. Specifically, Plaintiffs allege that: (1) Technicians are pressured to underreport time worked and to alter their time cards to decrease the amount of reported hours worked; (2) piece-rate codes submitted by Technicians are deleted, even when the task was completed; (3) piece-rate codes are changed to lower-paying codes; (4) Technicians are routinely required to deduct a thirty-minute meal period from their hours, even when they do not—and, by virtue of their grueling schedules, *cannot*—take a meal break; and (5) Technicians are required to incur significant expenses, reducing their effective wages. Prince further failed to maintain proper time records of such work, thereby violating FLSA record-keeping requirements. These violations occur across Prince's business—regardless of geographic region, state, or specific location within a state.

Under the FLSA, an aggrieved employee may bring a collective action on

behalf of all others who are "similarly situated."  29 U.S.C. § 216(b). The FLSA is a remedial statute whose two-stage certification process is designed to facilitate notice to affected employees so that they may decide at an early stage whether they would like to adjudicate their claims as part of a collective.

Plaintiffs meet—and, indeed, exceed—the lenient standard used to determine whether notice is appropriate to inform potential Opt-In Plaintiffs of their rights. The Complaint's detailed allegations and the attached declarations from eight Technicians who worked in Pennsylvania, Connecticut, Florida, Georgia, and Massachusetts demonstrate common FLSA violations. This is all that is required of Plaintiffs at this stage.

To date, seven Opt-In Plaintiffs who worked in five states have already filed consent forms to join this lawsuit. Over 1,500 current and former employees are likely eligible to join this proposed collective action. These hundreds of other employees are similarly situated because they all: (1) are subject to the same illegal compensation and overtime policies regardless of geographic location; and (2) have the same job duties, responsibilities, work hours, and compensation.

Plaintiffs respectfully request that the Court conditionally certify the proposed Collective and direct notice to be sent to proposed Collective members.

## II.    **PROCEDURAL HISTORY**

On April 13, 2021, Plaintiffs filed their Complaint against Defendants seeking

all available remedies under the FLSA and state law. ECF 1 ("Compl."). To date—in addition to the three named Plaintiffs—seven Opt-In Plaintiffs have filed consent forms to join the lawsuit. ECF 5, 26.

Comcast filed its Answer on May 5, 2021 and Prince filed its Answer on May 6, 2021. ECF 23-24. On May 21 and 27, 2021, Prince and Comcast each filed motions to dismiss the Plaintiffs and Opt-In Plaintiffs or, alternatively, to compel arbitration. ECF 27-30. On June 4 and 10, 2021, Plaintiffs opposed Defendants' motions. ECF 32-33.

## III.  FACTUAL BACKGROUND

### A.  Technicians Across the Country Have the Same Job Duties and Are Subject to the Same Policies and Procedures

Prince is a national contractor providing cable and communication equipment installations on behalf of Comcast—and other telecommunication providers—throughout the U.S.[2] Compl. ¶4. To carry out its installation services, Prince employs "Technicians" who are classified as non-exempt employees.[3] Compl. ¶¶2, 113.

_____

[2]    *See* History, PRINCE TELECOM, https://www.princetelecom.com/profile.asp (touting its "ability to deploy a well-equipped, professionally trained and experienced workforce capable of meeting needs anywhere in the United States") (last accessed July 1, 2021).

[3]    Declaration of Manuel Roman ("Roman") ¶6; Declaration of Jiquelle Kinnard ("Kinnard") ¶6; Declaration of Anthony Hayward ("Hayward") ¶5; Declaration of Michael Fauntleroy ("Fauntleroy") ¶6; Declaration of Kevin Murphy ("Murphy") ¶6; Declaration of Hamilton Negron ("Negron") ¶6; Declaration of Pedro Ortega ("Ortega") ¶6; Declaration of Vladimir Pierre ("Pierre") ¶6 (attached as Exs. A, B, C, D, E, F, G, and H, respectively).

Roman worked as a Technician between 2015 and 2019. Compl. ¶9. Kinnard worked as a Technician between 2015 and 2018. Compl. ¶10. Hayward worked as a Technician between 2017 and 2018. Compl. ¶11. Technicians' job duties include: installing, disconnecting, reconnecting, adding, changing, and troubleshooting cable TV, internet, and telephone equipment; attempting to identify and remedy sources of customer-perceived problems; driving company vehicles between home, warehouse, and work locations; cleaning, maintaining, and stocking vehicles; and educating customers.[4] Compl. ¶52.

Plaintiffs and other Technicians across the nation, *regardless of location*, are governed by common policies and procedures. Compl. ¶¶32-46. It is Prince's policy and practice to either underreport or refuse to track Technicians' hours worked—thereby underpaying Technicians for their hours worked for pre- and post-shift work, meal periods, and other off-the-clock work. Compl. ¶¶61-69. Further, Technicians are not reimbursed for work-related expenses.[5] Compl. ¶¶82-86.

Technicians' workdays typically begin between 5:30 and 7:00a.m., during which time they are required to log onto the mobile application operated by their assigned telecommunications provider to review job assignments and confer with

---

[4]    Hayward ¶6; Roman ¶7; Kinnard ¶7; Fauntleroy ¶7; Murphy ¶7; Negron ¶7; Ortega ¶7; Pierre ¶7.

[5]    Hayward ¶19; Roman ¶23; Kinnard ¶¶23, 33; Fauntleroy ¶22; Murphy ¶22; Negron ¶¶22-24; Ortega ¶21; Pierre ¶¶22-23.

Prince supervisors and its telecommunication provider clients as needed. Failure to log onto the mobile application results in phone calls and text messages from Prince supervisors. Pursuant to Prince's policies and practices, Technicians are not compensated for the time spent reviewing and responding to job assignments in the morning. Additionally, after reviewing job assignments, Technicians spend between twenty minutes and one hour every morning checking their vehicle to account for the equipment that they have and the equipment needed for the day.[6]

On most days, Technicians are required to report to a Prince warehouse before clocking in—typically between 6:00 and 7:00a.m. Compl. ¶52. At the warehouse, Technicians gather the equipment needed for the day and organize their vehicles. *Id.* Once all uncompensated pre-shift activity is completed, Technicians depart for their first job assigned for the day. *Id.* Technicians work long hours, typically between five and seven days per week, ten to fourteen hours per day, and between sixty and ninety hours per week. *Id.* Technicians are generally assigned five to ten jobs per day. Compl. ¶58. Each job entails one or more tasks, *e.g.*, installing cable, setting up internet service, or creating an electrical outlet.[7] *Id*.

In addition to uncompensated pre-shift work, Prince requires Technicians to

---

[6]     Hayward ¶9; Roman ¶¶9-11; Kinnard ¶¶9-11; Fauntleroy ¶¶9-11; Murphy ¶¶9-11; Negron ¶¶9-11; Ortega ¶¶9-11; Pierre ¶¶9, 14.

[7]     Hayward ¶¶6, 10; Roman ¶¶7, 12; Kinnard ¶¶7, 12; Fauntleroy ¶¶7, 12; Murphy ¶¶7, 12; Negron ¶¶7, 12; Ortega ¶¶7, 12; Pierre ¶¶7, 15.

work off-the-clock after clocking out of Prince's "R-Task" timekeeping application. Specifically, after clocking out for the day, Prince requires Technicians to assist other Technicians, return to previous jobs assigned, or deliver equipment to other Technicians.[8]

Technicians' grueling daily schedules and the pressure to complete assignments in the strict timeframes imposed by Prince and its telecommunications clients result in a systematic inability to take meal breaks. Technicians are often forced to eat while they are driving to the next job. Compl. ¶64. Despite this, Technicians are routinely required to falsely document that they took a thirty-minute meal break, regardless of whether the meal break was actually taken. If Technicians do not falsely document a meal break, Prince will often unilaterally alter Technicians' time sheets to reflect a break that was not taken.[9] Compl. ¶65. Technicians' time spent working during these thirty-minute meal periods is not recorded and is off-the-clock work. *Id.*

### B.    Compensation Model Results in Systemic Wage Violations

Technicians are provided with a job code for each discrete task they complete. Each job code corresponds to a dollar amount that the Technician is to be paid for

---

[8]    Hayward ¶¶10-13; Roman ¶¶12-16; Kinnard ¶¶12-15; Fauntleroy ¶¶12-15; Murphy ¶¶12-15; Negron ¶¶12-16; Ortega ¶¶12-15; Pierre ¶¶15-17.

[9]    Hayward ¶¶16-17, 25; Roman ¶¶20-21, 31; Kinnard ¶¶20-21, 30; Fauntleroy ¶¶20, 29; Murphy ¶¶19-20; Negron ¶¶20, 30; Ortega ¶¶19, 27; Pierre ¶¶20, 29.

completing that task. Compl. ¶59. This piece-rate compensation is used to determine the regular rate of pay for calculating Technicians' overtime compensation. Compl. ¶81. It is Prince's policy and practice to delete or alter codes that Technicians have submitted for completed job tasks, and Technicians are further pressured to omit completed tasks, resulting in systematic underpayment for work performed.[10] Compl. ¶¶60-63.

Further, Prince routinely conducts audits to ensure that Technicians are never paid for a job in excess of the monetary amount it receives for that job from telecommunication provider clients, including Comcast.[11] Indeed, Prince's Director of HR Anitha Verghese confirms that Technicians nationwide are governed by common corporate policies and procedures. *See* Ex. I, Anitha Verghese, LINKEDIN, linkedin.com/in/anitha-verghese-57614359 (last visited July 1, 2021). Specifically,

---

[10]    Hayward ¶¶22-23; Roman ¶¶27-28; Kinnard ¶¶26-27; Fauntleroy ¶¶25-26; Murphy ¶¶24-25; Negron ¶¶26-27; Ortega ¶¶23-24; Pierre ¶¶24-25.

[11]    For example, in a pre-termination letter sent to a Prince manager and produced by Prince in prior litigation, VP of Workforce Operations Thomas Tideman and Director of Client Services Scott Gruff documented an incident uncovered in an audit in which Technicians were paid both "hourly codes" and "training wages." *See* Ex. J, App. (Vol. 3) to Def's Br. in support of summary judgment, *Simpson v. Prince Telecom, LLC*, No. 14-cv-1211, 2017 WL 1206403 (D. Del. Mar. 31, 2017) ("*Simpson*"). In the letter, the Prince senior executives explained: "Trainees were used to complete this work and paid training wages *costing the company more money than the normal payout for the job*." *Id.* at 1 (emphasis added). This manager was subsequently suspended, according to Prince, for shirking his responsibility for ensuring compliance with "both Prince Telecom's and . . . [Comcast's] requirements." *Id.*

as the most-senior HR executive, Verghese and her corporate team "administer[] and enforce[] human resources policies and procedures *nationally among all locations*" and "[o]versee over 65 locations *nationwide* with responsibility of 2800+ employees[.]" *Id.* at 1 (emphasis added).

In hierarchical order—as reflected in Prince's organizational charts—Prince's corporate management team relies upon: "HR Generalists," "Regional Managers," "Area Managers," "Project Managers," and "Supervisors" to closely monitor Technicians' work and compensation, and to ensure compliance with policies governing the same.[12] Plaintiffs and all Technicians—*regardless of location*—are managed under this structure.[13]

Prince also uses advanced technology and data analytics to ensure that Technicians are uniformly subjected to the same policies and procedures across the nation. For example, one of Prince's clients, Comcast, tracks and records Technicians' performance in realtime and shares this data with Prince. *See* Ex. M, Director of Client Services Gruff Dep. Tr. at 22:13-24. Prince records and reviews Technicians' every movement in vans across the nation using cameras installed in

---

[12]    *See* Ex. K, App. (Vol. 1) to Def's Br. in support of motion for summary judgment, *Simpson,* ECF 66.

[13]    Prince represented in prior litigation that a Project Manager is "responsible for ensuring that the Technicians . . . follow[] the Company's policies and that any violations of  . . . policies [are] addressed immediately and consistently."  Ex. L, Def's Br. in support of summary judgment, *Simpson,* ECF 65 at ¶6.

each vehicle. *See* Ex. N, VP of Workforce Operations Tideman Dep. Tr. at 31:16-32:10.

Through this compensation system, Technicians are systematically denied the lawful minimum-wage and overtime compensation to which they are entitled under the FLSA and state law.

## IV.   <u>ARGUMENT</u>

### A.    **The Court Should Conditionally Certify the Proposed Collective for the Purpose of Facilitating Notice**

In the Third Circuit, a plaintiff seeking to represent a class of workers victimized by a common pay scheme in an FLSA collective action must pass a two-step certification process. *See Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 192-93 (3d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1523 (2013); *accord Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

The first stage of this two-step analysis—where this case is currently situated—is commonly referred to as the conditional certification stage, where the plaintiff must make a "modest factual showing" that he and the proposed collective are "similarly situated." *See Symczyk*, 656 F.3d at 192. This requirement is *lenient*.[14]

---

[14]    *See*, *e.g.*, *Smith v. Sovereign Bancorp, Inc.*, No. 03-cv-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003) ("It should be stressed that this is an extremely lenient standard."); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013) (characterizing the requirement as "fairly lenient"); *Rood v. R&R Express, Inc.*, 2019 WL 5422945, at *3 (W.D. Pa. Oct. 23, 2019) ("Given the 'modest burden' at the first stage of the proceeding 'motions for conditional

While the FLSA does not define the term "similarly situated," *Ruehl v. Viacom, Inc*., 500 F.3d 375, 389 n.17 (3d Cir. 2007), it is undisputed that a plaintiff need only produce "some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees" to establish that proposed collective members are similarly situated at the conditional certification stage. *Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257, 259 (E.D. Pa. 2014) (quoting *Symczyk*, 656 F.3d at 193).

The Court, at this stage, need only determine whether there "exists an identifiable class of employees within which some of the employees were subjected to an alleged unlawful policy or practice in a manner that will permit a finding that the employees were similarly situated." *Vasil v. Dunham's Athleisure Corp.*, No. 2:14-cv-690, 2015 WL 7871360, at *3 (W.D. Pa. Dec. 4, 2015). Plaintiffs need not produce an abundance of evidence to prevail. *McConnell v. EN Eng'g, LLC*, No. 2:20-cv-00153-MJH, 2020 WL 6747991, at *2 (W.D. Pa. Oct. 8, 2020) ("Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification.").

In evaluating whether the proposed collective is similarly situated at this stage, "'[r]elevant factors include (but are not limited to): whether the plaintiffs are

---

certification are generally successful.'") (quoting *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-cv-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)).

employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.'" *Fitch v. Giant Eagle Inc.*, No. 2:18-cv-01534-RJC-CRE, 2020 WL 8620076, at *3 (W.D. Pa. Oct. 28, 2020), *report and recommendation adopted*, 2021 WL 704147 (Feb. 23, 2021).

Critically, at this stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *In re Enterprise Rent-A-Car Empl. Pracs. Litig.*, MDL No. 2056, 2010 WL 3447783, at *21 (W.D. Pa. Aug. 13, 2010); *see also Given v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-cv-1266, 2018 WL 925996, at *2 n.5 (M.D. Pa. Feb. 16, 2018) (Connor, J.) ("Consideration of the merits of plaintiffs' claims is reserved for the step-two inquiry.").

The second and less-lenient stage of the FLSA certification process must be satisfied upon completion of discovery, at which time the court—with a more-robust factual record at its disposal—makes a conclusive determination as to whether each Opt-In Plaintiff is in fact similarly situated. *Symczyk*, 656 F.3d at 193

Here, at the first stage of conditional certification, Plaintiffs meet—and, indeed, exceed—their burden of demonstrating that they and the proposed Collective are similarly situated. Together, the Complaint, declarations submitted, Prince's own

concessions, and consent forms on file with the Court support Plaintiffs' position that all proposed Collective members are uniformly subjected to the unlawful pay scheme at the heart of this case. Plaintiffs' substantial allegations and the evidence before the Court plainly satisfy the lenient standard for the first stage of conditional certification. All Technicians are similarly situated because they: (1) are subject to the same illegal compensation and overtime policies; and (2) have the same job duties, responsibilities, work hours, and compensation.

### B.   Plaintiffs' FLSA Claims Should Be Conditionally Certified Because Plaintiffs Established a Factual Basis to Support Allegations of a Common Pay Policy

Prince systematically violated—and continues to violate—the FLSA, which requires employers to pay non-exempt, hourly employees overtime of at least one and one-half times the regular rate of pay for hours worked in excess of forty per week. 29 U.S.C. §§ 206, 207(a)(1). The calculation of hours worked is not limited to hours "clocked-in" and may include pre- and post-shift work. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003). "Working time," under the FLSA and the Third Circuit's prevailing "predominate benefit test," also includes meal or rest periods, when an employee does not actually take a break but instead continues to engage in work to the employer's predominate benefit—for example, driving between jobsites under time constraints and to meet employer-imposed quotas. 29 C.F.R. §§ 785.18, 785.19(a); *Babcock v. Butler County*, 806 F.3d 153, 157 (3d Cir.

2015).

All Technicians perform significant work off-the-clock. Technicians are required to (1) do pre-shift inventory work, (2) work through meal breaks, (3) continue to work late into the evening, and (4) work on unscheduled days off, all off-the-clock. *See* Section III.B *supra*. Requiring Technicians to work off-the-clock reduces the total hours factored into their compensation formula, which necessarily reduces Technicians' total compensation, overtime compensation, and total number of hours compensated at the required, *bona fide*, overtime rate. This uniformly violates the FLSA. 29 U.S.C. §§ 207 (a), (g).

Prince and its clients (like Comcast) also eliminate, reduce, or pressure Technicians to omit piece-rate codes for completed work. *See* Section III.B *supra*. This reduces Technicians' total compensation and overtime compensation, because Technicians are not compensated at the *bona fide* regular rate, nor are they compensated at the *bona fide* overtime rate. This too uniformly violates the FLSA. 29 U.S.C. §§ 207(a), (g).

In addition, because Technicians must regularly incur numerous expenses for Prince's and telecommunications providers' (like Comcast) sole benefit, *see* Section III.B *supra*, the regular and overtime compensation provided to Technicians is not paid unconditionally, free and clear of deductions or kickbacks. This also uniformly violates the FLSA. 29 U.S.C. § 206; 29 C.F.R. § 531.35.

Moreover, Plaintiffs and other Technicians have similar job responsibilities across the U.S. The attached declarations detail the inherently rote nature of those employees' job duties and leave little room for variation. Indeed, Prince concedes as much by posting at least thirty-six job openings in fourteen states and dozens of cities for its "Technician Cable Installation" role that feature the *same exact job duties*. *See* Ex. O. At the conditional certification stage, courts in this District have found that uniform job descriptions—while perhaps not dispositive on their own—provide substantial evidence of a similarly situated FLSA collective.[15]

All Technicians perform various duties, including: installing, disconnecting, reconnecting, adding, changing, and troubleshooting cable TV, internet, and telephone equipment; attempting to identify and remedy sources of customer-perceived problems; driving company vehicles between home, warehouse, and work

---

[15]      *See*, *e.g.*, *Given v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-cv-1266, 2018 WL 925996, at *2 (M.D. Pa. Feb. 16, 2018) (Connor, J.) (granting conditional certification and finding a "uniformly applicable job description" of the role at issue, in part, "sufficient evidence that the putative opt-in employees may be similarly situated to justify granting conditional certification"); *Bellan v. Capital BlueCross*, 496 F. Supp. 3d 854, 859 (M.D. Pa. 2020) (granting conditional certification and reasoning that the job descriptions provided "lend credence to Plaintiffs' claims [that plaintiffs and proposed collective members] perform the same or sufficiently similar work regardless of job title"); *see also Fitch v. Giant Eagle Inc.*, No. 2:18-cv-01534-RJC-CRE, 2020 WL 8620076, at *3 (W.D. Pa. Oct. 28, 2020), *report and recommendation adopted*, 2021 WL 704147 (Feb. 23, 2021) (granting conditional certification and reasoning that "Defendants maintained a uniform job description for" the proposed collective and that Defendant expected the proposed collective to "undertake the duties listed under Defendants' uniform[] job description").

locations; cleaning, maintaining, and stocking vehicles; and educating customers. Moreover, all declarants state that they regularly work in excess of forty hours a week and are subject to a substantially similar compensation scheme whereby their compensation is directly tied to production codes.

### C.    Similar Cases Have Been Certified

Substantially similar cases involving FLSA claims on behalf of cable installers have been certified. *See, e.g.*, Ex. P, *Jean-Pierre v. J&L Cable TV Servs., Inc.,* No. 1:18-cv-11499 (D. Mass. Oct. 7, 2019) Order (ECF 59) (conditionally certifying nationwide class of cable installers); Ex. Q, *Soto v. O.C. Commc'ns*, No. 17-cv-00251 (N.D. Cal. Aug. 31, 2017) Order (ECF 127) (conditionally certifying nationwide class of cable installers who alleged uncompensated pre- and post-shift work); Ex. R, *Sigui v. M&M Commc'ns, Inc.*, No. 1:14-cv-442 (D.R.I. Apr. 4, 2017) Order (ECF 80) (conditionally certifying class of cable installers who alleged that defendants' task-based compensation system did not pay lawful overtime); Ex. S, *Benoit v. Tri-Wire Eng'g Sols., Inc.,* No. 3:07-cv-30237 (D. Mass. June 4, 2008) Order (ECF 29).[16]

---

[16]    *See also Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017) (affirming conditional certification of cable installers who were forced to underreport their hours); *Beasley v. Custom Commc'ns, Inc.*, No. 5:15-cv-583-F, 2016 WL 5468255, at *5 (E.D.N.C. Sept. 28, 2016) (conditionally certifying cable installers who were paid on a piece-rate compensation scheme); *Williams v. Grayco Cable Servs., Inc.*, 187 F. Supp. 3d 760, 768 (S.D. Tex. 2016) (same); *Taylor v. Bear Commc'ns, LLC*, No. 4:12-cv-01261-BCW, 2013 WL 3270971, at *3 (W.D. Mo. June 27, 2013)

D.    **Plaintiffs' Proposed Notice Is Accurate and Informative, and the Notice Plan Should Be Approved**

District courts have broad discretion to allow a party asserting FLSA claims on behalf of others to notify potential "similarly situated" plaintiffs that they may choose to "opt-in" to the suit. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). Court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual cases, assures that joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Id.* at 171-72.

Plaintiffs' proposal for Court-approved notice to Collective members is timely, accurate, and informative—as required. *Id.* at 172. The Notice of Collective Action Lawsuit ("Notice") and Opt-in Consent Form (Exhibits T and U) provide notice of the pendency of the action and opportunity to opt-in. Plaintiffs' legal claims are accurately described, and proposed Collective members are advised that Defendants are defending the claims. The Notice also clearly states that Collective members are not required to participate in this action. Additionally, the Notice provides clear instructions on how to opt-in, accurately states the prohibition against

---

(same); *Jason v. Falcon Data Com, Inc.*, No. 09-cv-03990, 2011 WL 2837488, at *7 (E.D.N.Y. July 18, 2011) (same); *Joiner v. Groupware Int'l, Inc.*, No. 8:09-cv-1943-T-26, 2010 WL 2136533, at *2 (M.D. Fla. May 27, 2010) (same).

retaliation for participation in an FLSA action, and informs Collective members that this Court has not made any determination regarding the merits of Plaintiffs' claims. Thus, Plaintiffs request that the Court approve the Notice and Opt-In Consent Form submitted herewith for distribution to Collective members.

As described above, the pleadings and declarations submitted herewith demonstrate that proposed Collective members are similarly situated for notice purposes. Given this evidence, notice to proposed Collective members should be expedited, as delay threatens workers' ability to seek compensation for numerous hours of work for which they were systematically denied compensation.

In order to facilitate notice, Plaintiffs request that the Court require Defendants to produce to Plaintiffs' Counsel, within fourteen days of the Court's order granting this Motion, a collective list that includes the names of all Collective members, along with their last known mailing addresses, all e-mail addresses, all telephone numbers, social security numbers, and dates of employment. Based on this contact information, a third-party notice administrator will mail, e-mail, and text message the Court-approved Notice and Opt-In Consent Form to Collective members.

In recognition of the essential role that texts and e-mails play in "modern digital age" communication, Courts in this Circuit—and beyond—routinely endorse the distribution of notice via e-mail or text message. *See, e.g.*, *Gilbertson v. J. Givoo*

*Consultants I, Inc*., No. 20-cv-699,  2021 WL 689114, at *1 (D.N.J. Feb. 23, 2021)
(granting "email and text messaging [notice] . . . because of the heightened reliability
of electronic notifications to reach the intended individual"); *Belt v. P.F. Chang's
China Bistro, Inc.*, No. 18-cv-3831, 2020 WL 3829026, at *9 (E.D. Pa. July 8, 2020)
(" [I]t is appropriate in the modern digital age to distribute notice by mail, email, and
text, because although people frequently move and change addresses, they typically
retain the same email addresses and phone numbers."); *Dickensheets v. Arc Marine,
LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) ("providing notice via text message
. . . will almost always be appropriate in modern society"); *Vega v. Point Security,
LLC*, No. A-17-cv-049-LY, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017)
("[E]mail and cell phone numbers are a stable, if not primary, point of contact for
the majority of the U.S. population, and thus that using email and texts to notify
potential class members is entirely appropriate."); *Irvine v. Destination Wild Dunes
Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("The request that notice be
distributed via direct mail, email and text messaging appears eminently reasonable
to the Court. This has become a much more mobile society with one's email address
and cell phone number serving as the most consistent and reliable method of
communication.").[17]

---

[17]    *See also Gevasio v. Wawa, Inc.*, No. 17-cv-245, 2018 WL 385189, at *7
(D.N.J. Jan. 11, 2018) (granting e-mail notice); *Calvillo v. Bull Rogers, Inc.* 267 F.
Supp. 3d 1307, 1315 (D.N.M. 2017) (granting e-mail and text notice); *Eley v.*

Further, Plaintiffs request that signed Opt-In Consent Forms be returned to the administrator within 90 days (received, postmarked, or completed via an electronic signature service) after the date on which the Notice and Consent Forms are mailed. Plaintiffs will file the Consent Forms with the Court on an ongoing basis and no later than two weeks after the end of this 90-day notice period. Courts routinely approve similar notice plans to that requested here.[18]

In addition, Plaintiffs request that Prince post a copy of the Notice in appropriate, conspicuous, visible, and accessible places at each of its offices or other locations in which Technicians currently work during the notice period. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011); *accord Thompson v. Peak Energy Servs. USA, Inc.*, No. 13-cv-0266, 2013 WL 5511319, at *3 (W.D. Pa. Oct. 4, 2013).

---

*Stadium Grp.*, No. 14-cv-1594, 2015 WL 5611331, at *3 (D.D.C. Sept. 22, 2015) (granting text and e-mail notice); *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11-cv-2461, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (granting e-mail notice).

[18]     *See*, *e.g.*, *Fenley v. Wood Grp. Mustang, Inc.*, 170 F. Supp. 3d 1063, 1076 (S.D. Ohio 2016) (90-day mail and e-mail notice program); *Woods v. Vector Mktg. Corp.*, No. 14-cv-0264-EMC, 2015 WL 1198593, at *5 (N.D. Cal. Mar. 16, 2015) (authorizing use of an official case website, online opt-in form submission, e-mail notice, publication on Facebook, and an e-mail or postcard reminder notice); *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061 (D. Ariz. 2014) (authorizing use of an electronic signature service and reminder notice).

Courts in this Circuit approve similar notice plans to that requested here. In sum, Plaintiffs' proposal for court-approved notice to the proposed Collective is "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172. Plaintiffs' proposed notice plan should be approved.

## V.    __CONCLUSION__

For the foregoing reasons, Plaintiffs respectfully request that the Court conditionally certify the proposed Collective under Section 216(b) and authorize notice to allow potential Opt-In Plaintiffs to preserve their rights.

Dated: <u>July 6, 2021</u>                Respectfully submitted,

                        */s/ Shanon J. Carson*
                        Shanon J. Carson
                        Camille Fundora Rodriguez
                        Lane L. Vines*
                        Stacy Savett
                        Daniel F. Thornton
                        **BERGER MONTAGUE PC**
                        1818 Market Street, Suite 3600
                        Philadelphia, PA 19103
                        Tel.: (215) 875-3000
                        Fax: (215) 875-4604
                        scarson@bm.net
                        crodriguez@bm.net
                        lvines@bm.net
                        stasavett@bm.net
                        dthornton@bm.net

                        Carolyn H. Cottrell*
                        Michelle S. Lim*
                        Ori Edelstein*
                        **SCHNEIDER WALLACE COTTRELL**
                        **KONECKY LLP**

2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel.: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com
mlim@schneiderwallace.com
oedelstein@schneiderwallace.com

\* *pro hac vice* forthcoming

*Attorneys for Plaintiffs and the Proposed
Collective and Classes*

## <u>**CERTIFICATE OF WORD COUNT**</u>

I certify that the foregoing brief complies with Local Rule 7.8(b)(2) since it contains 4,959 words, as calculated by the word-processing system used to prepare that document, excluding the caption, tables, certifications, and signature block.

Dated: <u>July 6, 2021</u>                    <u>*/s/ Shanon J. Carson*           </u>
                                                              Shanon J. Carson

## <u>CERTIFICATE OF CONCURRENCE</u>

Pursuant to Local Rule 7.1, I certify that I sought concurrence in this Motion from counsel for all Defendants. Defendants have not given their concurrence in this Motion.

Dated: <u>July 6, 2021</u>                          <u>*/s/ Shanon J. Carson*            </u>
                                                         Shanon J. Carson

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record through the Court's ECF system on July 6, 2021.

/s/ *Shanon J. Carson*
Shanon J. Carson